**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM H. BRUCE, III,**

**Plaintiff,**

-vs-                                    Case No.  **6:04-cv-1595-Orl-22DAB**

**KEVIN BEARY, RANDALL ROOT,**
**KENNETH GLANTZ, and EDWARD**
**KELLY,**

**Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Doc. No. 34)** |
| **FILED:** | **February 9, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part.**

Plaintiff sued Defendants, Sheriff Kevin Beary and three of his deputies, alleging constitutional violations arising out of his arrest and prosecution and the seizure of vehicles, cash, and other items by members of the Orange County Sheriff's Office.  Plaintiff contends that Defendants violated his civil rights by wrongfully: (1) arresting him without probable cause or an accurate warrant; (2) instituting prosecution of Plaintiff without probable cause and with malice; (3)

unreasonably searching Plaintiff's business premises and seizing his property (Counts I, II, III). Plaintiff also contends that Defendants violated state law by falsely arresting him, conducting an unlawful search, converting property worth $500,000, and invading Plaintiff's privacy. Defendants move to dismiss Plaintiff's claims for failure to state a claim and for failing to plead with sufficient particularity to meet the heightened pleading requirements under 42 U.S.C. § 1983 to overcome claims of qualified immunity.

## I. Background Facts[1]

Plaintiff operated and was beneficial owner of the body shop known as Wholesale Auto Advantage, Inc., d/b/a A+ Auto Body, located at 3897 El Rey Road, Orlando, Florida. Doc. No. 30, ¶ 21. Plaintiff performed vehicle repairs that required the removal or replacement of the manufacturer's or state-assigned identification numbers and plates. *Id.* ¶ 22. Plaintiff had numerous VIN plates for the purpose of obtaining combined titles or rebuilt titles for cars containing parts from other vehicles. *Id.* ¶ 22.

On January 15, 2001 at approximately 10:00 a.m., the Orange County Sheriff's Office SWAT Team and Theft Squad, consisting of approximately 15 deputies, arrived at A+ Auto Body, located at 3897 El Rey Road. Doc. No. 30 ¶ 21, 24. After Defendant Kelly informed Plaintiff that he was there to do a "standard" random records check, the deputies conducted a search of the premises. *Id.* ¶ 27. Deputies searched every room, drawer, desk, cabinet, and office, and also interrogated Plaintiff's employees. *Id.* ¶ 28-29. About one hour after the search began, Zeeshan Shaikh arrived

---

[1] Given the Rule 12(b)(6) posture of the qualified immunity claim, the facts alleged in the Amended Complaint are treated as if they are all true. *Cottone v. Jenne*, 326 F.3d 1352, 1355 & n. 1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be the actual facts.")

at A+ Auto Body to fill out a complaint form.  *Id.* ¶ 30.  According to Plaintiff, Mr. Shaikh had

purchased an automobile from A+ Enterprises, Inc., *not* A+ Auto Body, which is a block down the

street.  *Id.*  Plaintiff was arrested about one hour after the search began; at the time of the arrest

Plaintiff was not informed of the charges against him.  *Id.* ¶ 32.  The bill of sale from Mr. Shaikh's

purchase of the 1993 black Mustang showed that the car had been "been a theft recovery with an

assigned Florida VIN."[2]  Doc. No. 30 ¶ 31, 41; Ex. E.

Mr. Shaikh's complaint was the reason for the search at Plaintiff's premises and the basis for

a search warrant that was applied for and issued *after* the initial hour-long warrantless search of

Plaintiff's business premises.  *Id.* ¶ 30.  Plaintiff was charged with: (1) operating a "chop shop"in

violation of Florida Statute § 812.16(2), and (2) possession of a motor vehicle from which the

identification number has been removed in violation of Florida Statute § 319.33.  Doc. No. 30, Ex.

D.  Plaintiff repeatedly denied that he was involved in any wrong doing, yet Defendants refused to

meet with Plaintiff or his counsel to discuss exculpatory information. *Id.* ¶ 34.

Defendants made certain statements concerning the arrest, in obtaining the search warrant, and

in their discussions with the State Attorney's office before and during Plaintiff's prosecution, such

as that Plaintiff had counterfeit safety stickers, illegally removed VIN plates, vehicles with altered

VINs and no assigned VIN, stolen vehicles, and was operating a chop shop.  Doc. No. 30 ¶ 31.

Defendants also failed to disclose that Plaintiff was in the business of performing automotive collision

repairs, had purchased the vehicles "as is" from the United States Bankruptcy Court and Plaintiff had

---

[2] The receipt is signed by the Dealer, "Bill Bruce."  Doc. No. 30 Ex. F.

provided copies of the bankruptcy inventory, signed repair orders, towing bills, and mechanics liens. *Id.*

The Sheriff subsequently initiated a forfeiture proceeding in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida pursuant to Florida Statute § 932.701 (the Florida Contraband Forfeiture Act) related to certain items that were seized from Plaintiff's premises. *Id.* ¶ 37. An adversarial preliminary evidentiary hearing was held in the forfeiture case on February 22, 2001 in state court, and the judge found that there was not sufficient probable cause for the forfeiture of $20,000.00 in cash, the tax records, restoration work orders, insurance work orders, and all files, records and titles. *Id.* However, there was sufficient probable cause for the forfeiture of two of the nine seized vehicles: a Blue/Silver Ford Mustang with no VIN number, and a 1986 Ford Mustang, VIN #1FABP28M5GF310438. Doc. No. 30, Ex. E. On April 30, 2001, the state attorney filed a *nolle prosequi* related to the criminal charges against Plaintiff for operating a chop shop. Doc. No. 30, Ex. D; Doc. No. 34 at 2 n.2.

Plaintiff alleges three counts for violation of his civil rights: false arrest and imprisonment (Count I); malicious prosecution and continuing unlawful seizure (Count II); unreasonable search and seizure (Count III). He also asserts seven counts for violation of his rights under state law: false arrest (Count IV, V), malicious prosecution (Count VI), conversion (Count VII); a right to privacy violation and invasion of privacy (Count VIII, IX, and X). Plaintiff alleges that, at the time he was arrested, there was no probable cause to search Plaintiff or his business, or to arrest Plaintiff, or to have a warrant issued, principally because Plaintiff was in the business of performing repairs on vehicles that required the removal or replacement of manufacturer's or state-assigned identification numbers and plates, and was therefore exempt from the provisions of Florida Statutes § 319.30(5)(c). He also

argues in the alternative, that the search of his premises was unreasonable because Mr. Shaikh's affidavit in support was based upon a sale of a vehicle from a different business and clearly indicated that the vehicle was a "theft recovery" with a 'Fl[orida] assigned VIN.'" Doc. No. 30 ¶ 40.

## II.  Standard of Review for Motions to Dismiss and Qualified Immunity

Defendants contend that Counts I to VII should be dismissed as a matter of law to the extent they allege false arrest, seizure, malicious prosecution or conversion because probable cause was found in the underlying forfeiture case and probable cause is a complete defense to false arrest and malicious prosecution claims as well as contradicting Plaintiff's conversion claim.  Plaintiff's state right to privacy claim in Count VIII, Defendants contend, cannot be brought under the Florida Constitution, which does not give rise to a private cause of action for money damages.  Lastly, Defendants contend that Counts IX and X, for common law invasion of privacy, should be dismissed as well.

Plaintiff contends that Defendants' Motion to dismiss the claims against the deputies should be denied because they have "grossly exaggerated" the scope of any probable cause, ignored their duty to investigate actual innocence, injected matters outside the four corners of the complaint, and overlooked controlling precedent.  Plaintiff further contends that the Motion to Dismiss sets forth no separate argument regarding the official capacity claims against Defendant Sheriff Beary.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41 45-46 (1957); *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998).  A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232 (1947).  The plaintiff need not set forth

all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. *Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996)[3].

The three individual Defendants, sued in their individual capacities, have pled the affirmative defense of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); see also *Lumley v. City of Dade City*, 327 F.3d 1186, 1193-94 (11th Cir. 2003) ("[q]ualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Carr v. Tatangelo,* 338 F.3d 1259, 1266 (11th Cir. 2003) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his individual capacity involves a two-step analysis. *Hope v. Pelzer,* 536 U.S. 730 (2002). Before applying the test, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Rich v. Dollar,* 841 F.2d

---

[3]According to the Eleventh Circuit, claims asserted pursuant to Section 1983 are subject to the "heightened pleading" standard as articulated in *Dalrymple v. Reno,* 334 F.3d 991, 996 (11th Cir. 2003) ("In examining the factual allegations of the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. . . . [T]he complaint must allege the relevant facts "with some specificity [and] more than mere conclusory notice pleading is required."), *cert. denied,* 541 U.S. 935 (2004); *Marsh v. Butler County,* 268 F.3d 1014, 1036 (11th Cir. 2001). This standard appears inconsistent with the United States Supreme Court's opinion in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). Given Plaintiff's allegations, the Court need not resolve this incpnsistency.

1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983)).  If the defendant satisfies this burden, the first prong of the test requires the plaintiff to show either that the official's actions "violated clearly established constitutional law" or a federal statute. *Id.; Saucier v. Katz,* 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201.  If the first inquiry leads the Court to conclude that Defendants did not violate Plaintiff's constitutional rights, "there is no necessity for further inquiries concerning qualified immunity." *Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003) (quoting *Saucier,* 533 U.S. at 201). However, "if a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002).

### III.  Application

*1.  Search and Seizure of Plaintiff's property*

Plaintiff contends that Defendants violated his constitutional rights by unreasonably searching Plaintiff's business premises and seizing his property without justification, *i.e.*, without probable cause or with an inaccurate or "after-the-fact" search warrant.  Plaintiff alleges that Defendants proceeded to search his premises without a warrant for the first hour of the search, and the warrant they later obtained was based on an affidavit which contained inaccurate information concerning the sale of a vehicle from a different business.  Defendants contend that Florida Statute § 812.055 authorized and justified the initial search of the Plaintiff's business premises as a matter of law.

Warrantless administrative searches in highly regulated industries, such as vehicle repair businesses, have generally been upheld.  In *New York v. Burger*, the United States Supreme Court

upheld a criminal conviction resulting from the warrantless search of a vehicle dismantling business performed under the authority of an administrative statute authorizing unannounced searches. 482 U.S. 691, 699-700 (1987). The Court explained:

> We have long recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable. . . . An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home. This expectation is particularly attenuated in commercial property employed in "closely regulated" industries. . . . Because the owner or operator of commercial premises in a "closely regulated" industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application in this context. Rather, we conclude that, as in other situations of "special need," where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment. . . . [I]n light of the regulatory framework governing this business and the history of regulation of related industries, an operator of a junkyard engaging in vehicle dismantling has a reduced expectation of privacy in this "closely regulated" business.

*Id.* at 699-700, 702, 707 (citations omitted). The inspection may be conducted by a police officer and, in the course of enforcing the statute, the inspecting officer may discover evidence of crimes[4], besides violations of the scheme itself; the discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal. *Id.* at 716-17.

The Florida administrative search statute on which Defendants rely in this case, Florida Statute § 812.055 gives:

---

[4]The fact that the Defendants performed an administrative search based on Mr. Shaikh's allegedly erroneous information or complaint (albeit a similarly named business) does not invalidate the search. Administrative searches conducted pursuant to valid statutory schemes do not violate the Constitution simply because of the existence of a specific suspicion of wrongdoing. *United States v. Thomas*, 973 F.2d 1152, 1155-56 (5th Cir. 1992).

[A]ny law enforcement officer . . . the right to inspect any . . . motor vehicle . . . salvage yard; licensed motor vehicle or vessel dealer's lot; motor vehicle . . . for the purpose of locating stolen vehicles . . . investigating the titling and registration of vehicles or vessels; inspecting vehicles . . . or inspecting records required in §§ 319.30 and 713.78.

FLA. STAT. § 812.055(1) & (2).  Plaintiff is in the business of vehicle repairs; thus, his business was subject to inspection of vehicles, titles, records, and registrations.  Doc. No. 30 ¶ 22.

Even before the United States Supreme Court upheld the constitutionality of warrantless searches in *New York v. Burger*, the Florida Supreme Court upheld § 812.055 on similar grounds.  *See Moore v. State*, 442 So.2d 215, 216 (1983) (§ 812.055 warrantless of inspection of truck with altered identification held constitutionally valid), *cited with approval in New York v. Burger,* 482 U.S. 691, 698 n.11 (1987); *Bludworth v. Arcuri*, 416 So. 2d 882 (Fla. 4th DCA 1982) (Florida statute § 812.055 authorizing warrantless investigations of vehicles and titles at automobile parts business is constitutional).

However, "[e]ven in the context of administrative searches of business property, . . . the Fourth Amendment limits warrantless searches."  *Swint v. City of Wadley, Ala.*, 51 F.3d 988,  998 (11ᵗʰ Cir. 1995).  The Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property if they are pretextual and exceed the scope allowed.  *Id*. In *Swint*, the "administrative searches" exceeded the scope of the statute because they were police raids that included 30 to 40 law enforcement officers, including the SWAT team, who prohibited everyone from moving or leaving for hours until the officers searched the cash register and door receipts, and had confiscated currency from the door receipts.  *Id*. at 999.  The Eleventh Circuit described the SWAT teams as a "massive show of force and excessive intrusion."  *Id*.  The officers also exceeded the scope of the administrative search by searching for violations of drug laws on

individual patrons in addition to violation of alcohol laws. *Id.*; *cf. Crosby v. Paulk*, 187 F. 3d 1339, 1348 (11th Cir. 1999) (concluding that the statutorily authorized two-hour warrantless investigation of nightclubs for violations of beverage code conducted by local law enforcement officers was not unreasonable).

Under Florida Statute § 812.055, administrative searches are limited to the inspection of vehicles, records, titles, and registrations of vehicles. FLA. STAT. § 812.055(2). Plaintiff alleges that the SWAT team and theft squad, comprised of approximately 15 deputies (including three of the Defendants), arrived at Plaintiff's business at approximately 10:00 a.m. Doc. No. 30 ¶ 21, 24. Defendant Kelly informed Plaintiff they were there to do a "standard" records check. *Id.* ¶ 27. The Defendant deputies and other deputies forced all employees from inside the building, lined them up against the fence, and blocked all entrances to the building. *Id.* Defendants and other deputies then "commenced to search every file, drawer, desk, cabinet, briefcase, every office, every room, including bathrooms." *Id.* ¶ 28. Based on Plaintiff's allegations *at this stage of the pleadings*[5], it appears that the administrative records search in this case exceeded the scope of the administrative searches allowable under § 812.055. "Implicit in *Burger* is the assumption that a particular search must comply with the ordinance purporting to authorize it in order to be valid under the Fourth Amendment." *Bevan v. Smartt*, 316 F.Supp.2d 1153, 1156-57 (D. Utah 2004). "It would make very little sense to require ordinances authorizing warrantless administrative searches to comply even with an attenuated version of the Fourth Amendment's requirements, only to bless particular searches which exceed the

---

[5]*O'Rourke v. Hayes,* 378 F.3d 1201, 1206 (11th Cir. 2004) (at motion to dismiss stage, court must look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right). Of course, at the summary judgment stage following discovery, the warrantless search may prove to have been only of vehicles and records and within the bounds of the statute. Also Defendants contend that Plaintiff signed an authorization for Deputy Root to search the premises and that he was not "coerced" to do so – even though that issue has been dropped in the Amended Complaint. This is a matter to be explored at the summary judgment stage after discovery has been conducted.

scope of the ordinances authorizing them." *Id.* (officers' warrantless administrative search of dancer's dressing room at sexually-oriented establishment was not a valid search); *see Lewis v. McMasters*, 663 F.2d 954, 955 (9th Cir. 1981) (warrantless search under the California Vehicle Code for inspection of vehicles, titles and registrations exceeded the permissible scope of the statute where the officers seized, removed, and opened a steel drum found on exterior of the property); *cf. Burger*, 482 U.S. at 694 (five officers entered junkyard and asked to see license and "police" book of vehicles, which owner did not have although required by statute; arrest made after vehicle identification numbers were compared to those in police computer and found to be stolen); *Moore v. State*, 442 So.2d 215, 216 (1983) (warrantless administrative search of automotive repair shop by two policemen pursuant to § 812.055, in which they located the truck on Moore's property, ascertained that the identification number had been changed, and seized the truck did not violate the constitution).

To be a clearly established law "does not mean that a court must have previously found the very action in question to be unlawful, but it does mean that 'in light of preexisting law the unlawfulness must be apparent.'" *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The right to be free of warrantless searches which are pretextual or exceed the scope of the pertinent administrative statute is a right clearly established. *See Swint*, 51 F.3d at 998 (business owners have the right to be free of pretextual warrantless searches performed under the guise of an "administrative" search).

Although Plaintiff's allegations would state a claim even in the face of qualified immunity, Plaintiff's Amended Complaint is vague about which Defendant(s) performed the search or where exactly each Defendant searched. "Defendant Kelly informed Plaintiff that he was there to do a 'standard' random records check." Doc. No. 30 ¶ 27. "Defendants and other deputies searched every

file, drawer, desk, cabinets, briefcase, every office, every room including bathrooms.  OSCO deputies also threatened and interrogated employees of A+ Auto Body."  Doc No. 30 ¶¶ 28-29.  Without specific allegations, it is impossible to determine how or if the scope of the administrative search was exceeded by the named Defendants or one of the other dozen or so deputies who are not named as Defendants in this case.  *See, e.g., Smith v. Alabama*, 996 F.Supp. 1203, 1212 (M.D.Ala. 1998) ("plaintiff has to come forward with specific facts, concerning each defendant, indicating that each defendant has violated his Fourteenth Amendment rights").

As to the subsequent search of the premises based on what Plaintiff describes as an "after-the-fact" search warrant, Plaintiff has not set forth specific allegations regarding who performed the search or obtained the warrant, nor is a copy of the search warrant part of the Amended Complaint.

Defendants also contend that because a search warrant was issued, they are entitled to quasi-judicial immunity for their actions in searching the premises.  According to Plaintiff's allegations, the search warrant was issued after the fact and sought based on information about a different business at a different location.  Quasi-judicial immunity is only available for a search warrant executed by disinterested law enforcement officers who are merely executing a judge's order, and not for warrants that the Defendants applied for and/or helped to procure with information that Plaintiff alleges was misleading. *See Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (police officers do not have absolute immunity for submitting supporting affidavits in their applications for arrest warrants) (citing *Malley v. Briggs,* 475 U.S. 335, 342-43 (1986)).

Plaintiff also alleges a claim for common law conversion of his property seized during the search of his business premises.  Conversion is the act of dominion wrongfully asserted over another's property inconsistent with his ownership therein. *Goodrick v. Malone*, 157 So.2d 829, 831 (Fla. 2d

DCA 1963). Since Plaintiff may state a claim for unreasonable search exceeding the scope of a lawful administrative search, he may also state a claim for conversion of the items seized. *See Brown v. State*, 613 So.2d 569, 571 (Fla. 2d DCA 1993) (property not returned by police department may be basis for civil action for money damages). However, Plaintiff's Amended Complaint and Response to the Motion to Dismiss are deficient in that they fail to set forth whether and when the seized items were requested to be returned and/or returned. *See id.* at 570 (once trial court has jurisdiction over criminal charges, it has inherent power to order return of property seized in search).

It is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss the Amended Complaint be **GRANTED in part** and Plaintiff be given leave to file a second amended complaint to replead his claims against all Defendants for unreasonable search and seizure to the extent the search exceeded that allowed under the administrative statute (Count III) and conversion against Sheriff Beary (Count VII), consistent with the discussion set forth above.

*2. Arrest of Plaintiff*

Plaintiff alleges that Defendants arrested him without probable cause or a warrant in violation of the Fourth Amendment to the United States Constitution. Plaintiff was arrested without an arrest warrant. A warrantless arrest without probable cause violates the Constitution and provides a basis for a § 1983 claim. *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990); *Reeves v. City of Jackson,* 608 F.2d 644, 650 (5th Cir. 1979). The Fourth Amendment provides in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV; *see Baker v. McCollan,* 443 U.S. 137, 142 (1979) (Fourth Amendment made applicable to the States by virtue of its incorporation into the Fourteenth Amendment). In order to prevail on a section 1983 claim alleging that his

warrantless arrest was unconstitutional, a plaintiff has the burden to prove the absence of probable

cause. *Rankin v. Evans,* 133 F.3d 1425, 1436 (11th Cir. 1998).  The existence of probable cause at the

time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest.  *See Marx*,

905 F.2d at 1505-06[6]. Under Florida law, probable cause is a defense to a false arrest claim.  *See*

*LeGrand v. Dean*, 564 So.2d 510, 511 (1990) (citing FLA. STAT. § 901.15 (1987)).

Defendants move for dismissal of Plaintiff's claims for false arrest/false imprisonment and

malicious prosecution, contending that the judicial finding of probable cause in the forfeiture of two

cars seized from Plaintiff's property is a complete defense to Plaintiff's claims of the false arrest,

malicious prosecution, and unlawful seizure of the other items.  Plaintiff responds that the probable

cause for forfeiture of two of the nine cars is not *res judicata* on the entire issue of probable cause

related to his arrest or prosecution because Plaintiff never claimed an interest in the two cars forfeited;

and there was no probable cause to seize the other vehicles, $20,000, and other items; and there was

no probable cause to arrest or prosecute Plaintiff.

According to the Amended Complaint, Plaintiff  was arrested about one hour and ten minutes

after the initial "records" search began (around 10:00 a.m.), based on the complaint of Zeeshan

Shaikh, who was instructed in what to write by one of the Defendants.  Doc. No. 30 ¶ 30.  Plaintiff

later discovered that Mr. Shaikh's complaint was the alleged reason for the raid, and the basis for a

search warrant that was applied for after the initial search and seizure of Plaintiff and his business.

However, Mr. Shaikh had apparently purchased an automobile from A+ Enterprises, Inc., not from

A+ Auto Body, which is a block down the street.  *Id.* ¶ 31.

---

[6]A federal malicious prosecution is a viable constitutional tort cognizable under § 1983 if alleged as a violation of
the Fourth Amendment. *See Uboh v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir. 1998); *Whiting v. Traylor,* 85 F.3d 581, 584
(11th Cir. 1996); *Kelly v. Curtis,* 21 F.3d 1544, 1554-55 (11th Cir. 1994).

Probable cause to arrest existed if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *Dahl v. Holley,* 312 F.3d 1228, 1233 (11th Cir. 2002) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228 (1991)). "To determine whether an officer had probable cause to arrest an individual, [the court must] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003).

In this case, Defendants went to A+ Auto Body based on information from Mr. Shaikh. Defendants performed an administrative records search[7] and checked the vehicle identification numbers, registrations, etc. on vehicles on the premises of Plaintiff's business. Defendants seized nine vehicles, cash and records. Defendants arrested Plaintiff for possession of a motor vehicle from which the identification number had been removed in violation of Florida Statute § 319.33(1)(d) and for operating a "chop shop" in violation of Florida statute § 812.16(2)[8]. The state court subsequently ordered that there was probable cause for seizure of two of the nine vehicles seized and forfeited: a

---

[7]Even if Mr. Shaikh had purchased the vehicle from a different entity, A+ Enterprises, Inc. and not A+ Auto Body, as Plaintiff contends, Defendants were nevertheless authorized to perform a records search on the premises pursuant to the statute.

[8]"Chop shop" is defined as "any area, building, storage, lot, field, or other premises or place where one or more persons are engaged or have engaged in altering, dismantling, reassembling, or in any way concealing or disguising the identity of a stolen motor vehicle or of any major component part of a stolen motor vehicle; where there are two or more stolen motor vehicles present; or where there are major component parts from two or more stolen motor vehicles present." Fla. Stat. 812.16(1) (2001).

Blue/Silver Ford Mustang with no VIN number, and a 1986 Ford Mustang, VIN #1FABP28M5GF310438.

Whether a particular set of facts gives rise to probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime. *Crosby v. Monroe County,* 394 F.3d 1328, 1332-33 (11th Cir. 2004). In this case, the burdens of proof for the criminal charges and for the forfeiture claims are different and probable cause for the vehicle forfeitures is not sufficient to automatically establish probable cause for either of the two criminal charges. The forfeiture proceeding under the Florida Contraband Forfeiture Act constitutes "a civil, *in rem* action that is independent of any factually related criminal actions." *In re Forfeiture of 1986 Pontiac Firebird, Vehicle Identification No. 1G2FS87H3GN236562,* 600 So.2d 1178, 1179 (Fla. DCA 1992) (citing *United States v. One 1974 Porsche 911-S Vehicle*, 682 F.2d 283, 285 (1st Cir.1982)).

The Florida Contraband Forfeiture Act provides that certain forms of contraband, including motor vehicles used in violation of the Act's provisions, may be seized and potentially forfeited. FLA. STAT. § 932.703(1)(a). The two forfeited cars were seized pursuant to the Florida Contraband Act, which allows "personal property [to] be seized at the time of the violation or subsequent to the violation, if the person entitled to notice is notified at the time of the seizure . . . that there is a right to an adversarial preliminary hearing after the seizure to determine whether probable cause exists." FLA. STAT. § 932.703(2)(a). Cars with missing or altered vehicle identification numbers are rendered "contraband" pursuant to Florida Statute § 319.33(7)(a).

Florida Statute § 319.33(1)(d) requires that the perpetrator possess the motor vehicle with the altered or missing VIN with "knowledge of such destruction" of the VIN. FLA. STAT. § 319.33(1)(d)[9]. Concerning the two vehicles with probable cause to seize, Plaintiff alleges in the Amended Complaint that "[t]he only exceptions to vehicles received in the ordinary course of business were the two [forfeited] vehicles. One was left by a former employee, and Plaintiff did not claim ownership of it. As to the other, Plaintiff could not identify it with certainty at the time of the [forfeiture] hearing, but he believed it to have been purchased from the bankruptcy court." Doc. No. 30 at 9 n.1. Possession of the vehicle, standing alone, will not equate to knowledge that the VIN has been altered. *See Jackson v. State*, 736 So.2d 77, 84 (Fla. 4th DCA 1999) (possession of a recently stolen vehicle, without more, does not equate with guilty knowledge concerning the tinkering with a VIN number). Thus, reading the facts of the Amended Complaint in the light most favorable to Plaintiff, the probable cause finding on the forfeited vehicles is not a *res judicata* bar to Plaintiff's assertion of the claims alleged in the Amended Complaint. Defendants did not independently argue the existence of probable cause for the separate claims alleged (the search, the arrest, the prosecution), other than the broader *res judicata* argument.

However, the facts surrounding the seizure of the vehicles – and supporting probable cause for those seizures – may be used to assess whether the Defendants had arguable probable cause to arrest Plaintiff.

---

[9]The pertinent portion of the statute reads: "To possess, sell or offer for sale, conceal, or dispose of in this state a motor vehicle or mobile home, or major component part thereof, on which the motor number or vehicle identification number has been destroyed, removed, covered, altered, or defaced, with knowledge of such destruction, removal covering, alteration, or defacement, except as provided in s. 319.30(4)" which is not applicable. FLA. STAT. § 319.33(1)(d).

*Qualified Immunity for the Arrest*

Plaintiff does not dispute that Defendants were acting within the scope of their discretionary authority when they arrested Plaintiff. Doc. No. 30 ¶ 16. Generally, an on-duty police officer making an arrest is performing a discretionary function. *See Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004) (describing discretionary function as one that falls within the officer's job responsibilities).

As such, the initial burden with regard to qualified immunity has been met and the burden shifts to Plaintiff to show that the officers are not entitled to qualified immunity. To do so, Plaintiff must establish that the facts as alleged in his Amended Complaint show that Defendants' conduct violated Plaintiff's constitutional rights and that those rights were clearly established. Plaintiff contends that Defendants violated his constitutional rights by wrongfully arresting him without probable cause or an accurate warrant.

"To receive qualified immunity protection, an officer need not have actual probable cause but only *arguable probable cause." Holmes v. Kucynda,* 321 F.3d 1069, 1079 (11th Cir. 2003). Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist. *Jones v. Cannon,* 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.") To determine whether an officer has arguable probable cause, the inquiry is "whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id.*; *Durruthy v. Pastor,* 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed."), *cert. denied*, 125 S.Ct. 45 (2004); *Montoute v. Carr,* 114 F.3d

181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' *i.e.*, the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed."). Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime. *Crosby v. Monroe County,* 394 F.3d 1328, 1332-33 (11th Cir. 2004).

To determine whether an officer had probable cause to arrest an individual, the court must examine the events leading up to the arrest. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] *could have believed* that probable cause existed to arrest." *Lee v. Ferraro,* 284 F.3d 1188, 1195 (11th Cir. 2002) (emphasis added). Therefore, "[e]ven law enforcement officers who reasonably *but mistakenly conclude* that probable cause is present are entitled to immunity." *Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) and emphasis added), *cert. denied*, 540 U.S. 879 (2003); *see also Scarbrough v. Myles,* 245 F.3d 1299, 1302-03 (11th Cir. 2001) ("Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors").

Eleventh Circuit decisions make it clear that what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at

the time of their conduct, *not the facts known to the plaintiff then* or those known to a court later. *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) (citing *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).  At the time Defendants arrested Plaintiff, Defendants learned during the records search that Plaintiff had at least two cars on his property with a missing or altered VIN.  Deputies had received a complaint from a witness (Mr. Shaikh) that the VIN on his vehicle, purchased from Plaintiff "Bill" Bruce had a problem.  Plaintiff contends that Mr. Shaikh's car was actually purchased from a different business with a very similar name (A+ Enterprises), not Plaintiff's, a block away.  However, the sales receipt is signed by "Bill Bruce," which a reasonable police officer could have believed was the nickname of Plaintiff William Bruce (Doc. No. 30, Ex. E).  More importantly, Mr. Shaikh came to the scene of Plaintiff's business (A + Auto Body) before signing the complaint, and it was reasonable for officers to believe Mr. Shaikh's lack of objection about the location meant they were at the correct business.  It was reasonable for Defendants to rely on Mr. Shaikh's complaint.  *See Joseph v. Kimple*, 343 F. Supp.2d 1196, 1202 (S.D. Ga. 2004) (the Fourth Amendment does not protect against an individual witness who gives incorrect information or lies about recollections to investigators), *aff'd*, 391 F.3d 1276 (11th Cir. 2004).  Plaintiff contends that the bill of sale contained information that explained why the VIN was problematic -- it "had been a theft recovery with an assigned Florida VIN."  Defendants are not required to "explore and eliminate every theoretically plausible claim of innocence" but they cannot choose to ignore information offered.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004).

Defendants are not required to accept as established the information that Plaintiff proffered[10] to explain the faulty VIN, especially in conjunction with finding at least two other cars on Plaintiff's property that had missing or altered VINs (which were ultimately forfeited).  *See, e.g., Marks v. Carmody*, 234 F.3d 1006, 1010 (7th Cir. 2000) (officers had arguable probable cause to arrest and did not need to accept civil rights plaintiff's defenses proffered that tended to show lack of intent to defraud the company he himself had incorporated; issues of mental state and credibility are for judges and juries to decide).  The situation is distinguishable from *Burdeshaw v. Snell*, in which the officer did not act reasonably when, despite the driver's urging to compare prescription medication bottles in his car to the assortment of pills in an unmarked bottle found on the driver's person, the officer refused to do so.  350 F. Supp.2d 944, 950 (M.D. Ala. 2004) (officer may not ground arguable probable cause upon mere speculation and ignore the impact of objective exculpatory evidence that is present at the scene of the arrest).

According to Plaintiff, one of the cars belonged to an employee of Plaintiff and was abandoned; Defendants may not have had arguable probable cause to arrest Plaintiff for being "in possession" of that vehicle if it belonged to someone else and Defendants could have easily determined the ownership status at the scene of the arrest.  Officers are "not permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-29 (11th Cir. 2004) (an officer is not required to explore and eliminate every theoretically plausible claim of innocence, but may not choose to ignore information that has been offered to him or elect not to obtain easily

---

[10]There is no allegation about when Plaintiff presented the bill of sale, nor how he had access to it from the other business, A+ Enterprises.

discoverable facts from other witnesses).  However, Plaintiff does not dispute that the second vehicle was in his possession and that the VIN had been altered or tampered with.  Plaintiff merely provides what, at best, is the supposition that he believes the second vehicle may have originated with the bankruptcy court.  Even at the time of the probable cause hearing on February 22, 2001 (one month after Plaintiff's arrest) – he could not be certain of the reason for the problematic VIN in the second car, so he certainly had not offered exculpatory information to the officers prior to that point.

Where the police have information that there is something wrong with the identity of the vehicle, and the owner cannot refute it, it is reasonable for law enforcement to attribute knowledge of the car's legal status the possessor of the vehicle.  *See Rohde v. City of Roseburg,* 137 F.3d 1142, 1144 (9th Cir. 1998).  In *Rohde,* the driver of a car was arrested when he could not provide the registration, or title to the car in his own name.  The court held that, since the officer had reliable information indicating that the vehicle had been stolen, he had probable cause to believe that the driver had committed the crime of either stealing the car or knowingly operating a stolen vehicle because the driver did not present any proof of ownership that would rebut the evidence that the vehicle had been stolen. *Id.*  Similarly, in this case, where Defendants had reliable information from a witness indicating that Plaintiff had sold him a vehicle with an altered or tampered VIN, and Defendants found at least one vehicle which undisputedly belonged to Plaintiff with a VIN that violated § 319.33, they had arguable probable cause to arrest him on the charge of possession of a motor vehicle from which identification number has been removed.  Doc. No. 30, Ex. E.  The individual Defendants Root, Kelly and Glantz are entitled to qualified immunity based on Plaintiff's claim of false arrest because they had arguable probable cause to arrest Plaintiff and thus did not violate his constitutional rights.

### 3. Malicious Prosecution claim

Plaintiff alleges that the prosecution against him was instituted by Defendants without probable cause, because the facts observed by Defendants prior to arresting Plaintiff, and the matters known to them at the time they instituted the prosecution, would not have warranted a reasonable police officer to believe any criminal offense had been committed by Plaintiff.  Plaintiff also alleges that Defendants acted with malice in instituting this prosecution in their reckless disregard for Plaintiff's rights and their personal hostility toward Plaintiff, and by Defendants' knowing material misstatements of fact and omission of exculpatory information in support of the prosecution[11].  To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Wood v. Kesler,* 323 F.3d 872, 881 (11th Cir. 2003), *cert. denied*, 540 U.S. 879 (2003).  "Although both state and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Id.* at 882.

Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor

---

[11]Plaintiff alleges that he is exempt from provisions of § 319.30 because he was in the business of performing automotive collision repairs on vehicles that required the removal or replacement of manufacturer's or state-assigned identification numbers and plates and information that Plaintiff had purchased the vehicles in different stages of repair from the United States Bankruptcy Court.  Doc. No. 30 ¶ 31, 39.

of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234-35 (11th Cir. 2004) (citing *Durkin v. Davis,* 814 So.2d 1246, 1248 (Fla. 2nd DCA 2002)).  If a Plaintiff fails to prove just one of these elements, the entire case is lost. *Id.*

The first and third of the common law elements for malicious prosecution appear to be met based on Plaintiff's allegations.  After Plaintiff's arrest on January 15, 2001, he was charged by information with operating a chop shop and possession of a motor vehicle from which the identification number has been removed. Doc. No. 30, Ex. D.  The prosecution was continued against Plaintiff until a "nolle prosequi" was entered on the charges on April 30, 2001. *Id.*, Ex. E.  In Florida, a *nolle prosequi* (as was issued here) is merely an acknowledgment that the particular matter will not be further prosecuted, or an expression of unwillingness to prosecute; the underlying reason for a *nolle prosequi* may or may not be related to the merits of the cause being abandoned. *Gatto v. Publix Supermarket, Inc.,* 387 So.2d 377, 381 (Fla. 3d DCA 1980).  The entry of a *nolle prosequi* is considered a  favorable termination for purposes of a federal malicious prosecution claim. *Uboh v. Reno,* 141 F.3d 1000, 1005 (11th Cir. 1998); *Alderman v. McDermott*, 2004 WL 1109541, *9 n.97 (M.D. Fla. Apr. 27, 2004) (Conway, J.) (*nolle prosequi* on charge of aggravated assault was a "termination in plaintiff's favor" for purposes of considering a malicious prosecution claim).

The remaining elements in dispute are: whether Defendants were the legal cause of the original proceeding; whether there was a violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures; whether there was an absence of probable cause for the original criminal proceeding, and whether there was malice on the part of the Defendants.  Plaintiff contends that even

if arguable probable cause existed at the time of Plaintiff's arrest, the Defendants are liable because they caused the prosecution to continue after probable cause was extinguished when Plaintiff's legitimate explanations[12] for the altered VINs were made available but Defendants ignored them.

As the Eleventh Circuit has held, it is not enough that the *prosecution* against a § 1983 claimant continues, the Plaintiff bears the burden of proving that he continued to be *seized* in relation to the continuing prosecution, in violation of his constitutional rights. *Kingsland*, 382 F.3d at 1235. The original arrest cannot form the basis for the federal malicious prosecution claim. *Id.* Where the arrest is warrantless, as in this case, the judicial proceeding does not begin until the party is arraigned or indicted and a plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment. *Id.* at 1235. Plaintiff was arrested on January 15, 2001 and charged by information with operating a chop shop and possession of a motor vehicle from which identification number has been removed. Doc. No. 30, Ex. D. This arrest cannot form the basis for Plaintiff's malicious prosecution claim because it occurred prior to arraignment. Although Plaintiff alleges the prosecution was continued against him until the *nolle prosequi* was entered on April 30, 2001, he fails to allege when he was arraigned or the facts of any "continuing seizure" that would support a malicious prosecution claim. "Normal conditions of pretrial release," such as bond requirements or appearance at an arraignment, do not constitute a "continuing seizure" barring some

---

[12]Plaintiff alleges that Defendants made misstatements and omissions during their discussions with the State Attorney's office before and during Plaintiff's prosecution, including that Plaintiff had counterfeit safety stickers, illegally removed federal VIN plates, a vehicle without a Florida assigned VIN, stolen vehicles and those with altered VINs, and that Plaintiff was operating a chop shop. They also allegedly failed to consider or disclose that Plaintiff was in the business of performing automotive collision repairs on vehicles that required the removal or replacement of manufacturer's or state-assigned identification numbers and plates, that Plaintiff had purchased the vehicles (as is, in different stages of repair) from the United States Bankruptcy Court, that Plaintiff had provided copies of the bankruptcy inventory; signed repair orders, towing bills, and mechanics liens relating to Specialty Vans, Inc.; and the bill of sale for the 1993 black Mustang purchased by Mr. Shaikh stating that the car had been a theft recovery with an assigned Florida VIN. Doc. No. 30 ¶ 31.

significant, ongoing deprivation of liberty.  *Kingsland*, 382 F.3d at 1235-36 (citing *Nieves v. McSweeney*, 241 F.3d 46, 56-57 (1st Cir. 2001) (no post-arraignment seizure because of "benign nature" of pretrial release conditions).  Plaintiff has failed to alleged a crucial element of a federal claim for malicious prosecution in that he has not alleged a "significant, ongoing deprivation of liberty" to survive a motion to dismiss.  In addition, Plaintiff has failed to allege how the Defendants were the legal cause of the original proceeding in order to satisfy the elements of the state claim for malicious prosecution.

*4.  Other state law claims -- privacy violations*

Defendants contend that Plaintiff's state constitutional right to privacy claim (Count VIII) cannot be brought under the Florida Constitution, which does not give rise to a private cause of action for money damages. *Resha v. Tucker*, 670 So.2d 56, 59 (Fla. 1996).  As Plaintiff correctly argues, the holding of *Resha* appears limited to bar a private cause of action for money damages against a state official based on acts determined to be outside the scope of the official's state duties. *Id.*  The Florida courts have not clearly barred such an action against officials acting within the scope of their employment, and Plaintiff's claim is not due to be dismissed on that basis at this stage of the case.

Defendants contend that Counts IX and X, for common law invasion of privacy by the Sheriff and the deputies, should be dismissed, but do not set forth any argument whatsoever in support.  Defendants' motion must be supported by argument or citation to authorities in support of the relief requested (Local Rule 3.01(a)), and where it is not, it will be denied.

*5.  Official capacity claims against Sheriff Beary*

Although Defendants' Motion to Dismiss apparently seeks dismissal of all claims against all Defendants, including those against Sheriff Beary in his official capacity, there is no argument

whatsoever for dismissal of the official capacity claims against the Sheriff.  For this reason, it is recommended that the Plaintiff be granted leave to replead the allegations against the Sheriff in his official capacity in a second amended complaint.

### CONCLUSION

It is **RECOMMENDED** that Defendants' Motion to Dismiss the Amended Complaint be **GRANTED in part** and Plaintiff's claims for false arrest against the individual Defendants (Count I, V) and all Defendants for malicious prosecution (Count II, VI) be **DISMISSED**; Plaintiff be given leave to file a second amended complaint to replead his claims against all Defendants for unreasonable search and seizure to the extent the search exceeded that allowed under the administrative statute (Count III) and invasion of privacy (Counts  IX, X).   It is further **RECOMMENDED** that Plaintiff also be given leave to replead his claims against Defendant Beary in his official capacity for false arrest (Count I, IV), and state claims for common law conversion (Count VII), state constitutional right to privacy (Count VIII).

Failure to file written objections to the proposed findings and recommendations contained in this report within eleven (11) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 11, 2005.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy