**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM H. BRUCE, III,**

                              **Plaintiff,**

**-vs-**                                                    **Case No.  6:04-cv-1595-Orl-22DAB**

**KEVIN BEARY, RANDALL ROOT,**
**KENNETH GLANTZ, and EDWARD**
**KELLY,**

                              **Defendants.**
_____

**ORDER**

**I.  INTRODUCTION**

        This cause is before the Court on Plaintiff's Objections to Portions of the Report and

Recommendation (Doc. No. 42-1) filed on August 22, 2005.

        United States Magistrate Judge David A. Baker ("Judge Baker") has submitted a Report and

Recommendation (Doc. No. 41) recommending that Defendants' Motion to Dismiss Amended

Complaint (Doc. No. 34) be granted in part and denied in part.

        After an independent *de novo* review of the record in this matter, including the objections filed

by the Plaintiff, the Court OVERRULES the Plaintiff's Objections (Doc. No. 42-1) and AFFIRMS

and ADOPTS in part Judge Baker's memorandum opinion (Doc. No. 41).

## II.  BACKGROUND[1]

### A.    Factual Background

Plaintiff, William H. Bruce, III, operated and was beneficial owner of the body shop known as Wholesale Auto Advantage, Inc., d/b/a A+ Auto Body ("A+ Auto Body"), located at 3897 El Rey Road, Orlando, Florida.[2]  Plaintiff performed vehicle repairs that required the removal or replacement of the manufacturer's or state-assigned identification numbers and plates.[3]  Plaintiff had numerous VIN plates for the purpose of obtaining combined titles or rebuilt titles for cars containing parts from other vehicles.[4]

On January 15, 2001 at approximately 10:00 a.m., the Orange County Sheriff's Office SWAT Team and Theft Squad, consisting of approximately 15 deputies, arrived at A+ Auto Body, located at 3897 El Rey Road.[5]  After Defendant Kelly informed Plaintiff that he was there to do a "standard"

---

[1]       Unless otherwise stated, the factual background for this case is excerpted from Judge Baker's Report and Recommendation (Doc. No. 41).  For purposes of the Motion to Dismiss, the facts alleged in Plaintiff's Amended Complaint are accepted as true.  *See* Report and Recommendation (Doc. No. 41) at 2 n.1 (citing *Cottone v. Jenne*, 326 F.3d 1352, 1355 & n.1); *see also Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir. 1992) ("[f]or a motion to dismiss to be granted, plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief").

[2]       Amended Complaint (Doc. No. 30-1), ¶¶ 21, 23 at 6.

[3]       *Id.*, ¶ 22 at 6.

[4]       *Id.*

[5]       *Id.*, ¶¶ 21, 24 at 6.

random records check, the deputies conducted a search of the premises.[6]  Deputies searched every

room, drawer, desk, cabinet, and office, and also threatened and  interrogated Plaintiff's employees.[7]

About one hour after the search began, Zeeshan Shaikh arrived at A+ Auto Body to fill out a

complaint form.[8]   According to Plaintiff, Mr. Shaikh had purchased an automobile from A+

Enterprises, Inc., not A+ Auto Body, which is a block down the street.[9]  The bill of sale from Mr.

Shaikh's purchase of the 1993 black Mustang showed that the car had been "been a theft recovery

with an assigned Florida VIN."[10]  Also, the dealer's signature line on the bill of sale contained the

name "Bill Bruce."[11]  Plaintiff was arrested about one hour after the search began; at the time of the

arrest Plaintiff was not informed of the charges against him.[12]

Mr. Shaikh's complaint was the reason for the search at Plaintiff's premises and the basis for

a search warrant that was applied for and issued *after* the initial hour-long warrantless search of

Plaintiff's business premises.[13]  Plaintiff was charged with: (1) operating a "chop shop"in violation

---

[6]      *Id.*, ¶¶ 27-28 at 6-7.

[7]      *Id.*, ¶¶ 28-29 at 7.

[8]      *Id.*, ¶ 30 at 7.

[9]      *Id.*

[10]     *Id.*, ¶¶ 31, 40 at 7, 9; Used Car Order/Bill of Sale (Doc. No. 30-2), Ex. F at 1.

[11]     Used Car Order/Bill of Sale (Doc. No. 30-2), Ex. F at 1.

[12]     Amended Complaint (Doc. No. 30-1), ¶ 32 at 8.

[13]     *Id.*, ¶ 30 at 7.

of Florida Statute § 812.16(2), and (2) possession of a motor vehicle from which the identification number has been removed in violation of Florida Statute § 319.33(1)(d).[14] Plaintiff repeatedly denied that he was involved in any wrong doing, yet Defendants refused to meet with Plaintiff or his counsel to discuss exculpatory information.[15]

Defendants made certain statements concerning the arrest, in obtaining the search warrant, and in their discussions with the State Attorney's office before and during Plaintiff's prosecution, including that Plaintiff had counterfeit safety stickers, illegally removed VIN plates, vehicles with altered VINs and no assigned VIN, stolen vehicles, and was operating a chop shop.[16] Defendants also failed to disclose that Plaintiff was in the business of performing automotive collision repairs, had purchased the vehicles "as is" from the United States Bankruptcy Court, and had provided copies of the bankruptcy inventory, signed repair orders, towing bills, and mechanics liens.[17]

The Sheriff subsequently initiated a forfeiture proceeding in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida pursuant to Florida Statute § 932.701 (the Florida Contraband Forfeiture Act) related to certain items that were seized from Plaintiff's premises.[18]  An

---

[14]     Information (Doc. No. 30-2), Ex. D at 1-2.

[15]     Amended Complaint (Doc. No. 30-1), ¶ 34 at 8.

[16]     *Id.*, ¶ 31 at 7.

[17]     *Id.*

[18]     *Id.*, ¶ 37 at 8-9; Motion to Dismiss Amended Complaint ("Motion to Dismiss") (Doc. No. 34) at 2.

adversarial preliminary evidentiary hearing was held in the forfeiture case on February 22, 2001 in state court, and the judge found that there was insufficient probable cause for the forfeiture of $20,000.00 in cash,  tax records, restoration work orders, insurance work orders, and all files, records and titles.[19]  However, there was sufficient probable cause for the forfeiture of two of the nine seized vehicles: a Blue/Silver Ford Mustang with no VIN number, and a 1986 Ford Mustang, VIN 1FABP28M5GF310438.[20]  On April 30, 2001, the state attorney filed a *nolle prosequi* related to the criminal charges against Plaintiff for operating a chop shop.[21]

**B.  Procedural History**

On January 27, 2005, Plaintiff filed an Amended Complaint (Doc. No. 30) in this Court alleging that Sheriff Beary and three of his deputies violated his constitutional rights.  Plaintiff alleges three counts for violations of his federal civil rights against all Defendants: false arrest and false imprisonment (Count I), malicious prosecution and continuing unlawful seizure (Count II), and unreasonable search and seizure (Count III).  He also asserts seven counts for violations of his rights under state law: false arrest against Sheriff Beary (Count IV), false arrest against deputies Root, Kelly, and Glantz, the "individual defendants" (Count V), malicious prosecution against the individual defendants (Count VI), conversion against Sheriff Beary (Count VII), violation of the right to privacy against Sheriff Beary (Count VIII), invasion of privacy against Sheriff Beary (Count IX), and invasion

---

[19]   Amended Complaint (Doc. No. 30-1), ¶ 37 at 8-9.

[20]   *Id.*, ¶ 37 at 9; Order on Probable Cause (Doc. No. 30-2), Ex. E at 1-2.

[21]   Nolle Prosequi (Doc. No. 30-2), Ex. D at 1.

of privacy against the individual defendants (Count X). Plaintiff alleges that, at the time he was arrested, there was no probable cause to search Plaintiff or his business, to arrest Plaintiff, or to have a warrant issued principally because Plaintiff was in the business of performing repairs on vehicles that required the removal or replacement of manufacturer's or state-assigned identification numbers and plates, and Plaintiff was therefore exempt from the provisions of Chapter 319 of the Florida Statutes. Plaintiff also argues in the alternative that the search of his premises was unreasonable because Mr. Shaikh's affidavit in support of the belated search warrant was based upon a sale of a vehicle from a different business, and the bill of sale clearly indicated that the vehicle was sold "'as is' with the words 'theft recovery' and 'Fl[orida] assigned VIN.'"[22]

On February 9, 2005, Defendants filed a Motion to Dismiss Amended Complaint (Doc. No. 34) alleging that Plaintiff failed to state a claim and failed to plead with sufficient particularity to meet the heightened pleading requirements under 42 U.S.C. § 1983 to overcome the Defendants' claims of qualified immunity.

On August 11, 2005, Judge Baker entered a Report and Recommendation (Doc. No. 41) recommending that Defendants' Motion to Dismiss be granted in part and that Plaintiff's claims for false arrest against Deputies Root, Glantz, and Kelly–the individual defendants–(Counts I and V) and Plaintiff's claims against all Defendants for malicious prosecution (Counts II and VI) be dismissed. Judge Baker also recommended that Plaintiff be given leave to file a second amended complaint to

---

[22]     Amended Complaint (Doc. No. 30-1), ¶ 40 at 9; Used Car Order/Bill of Sale (Doc. No. 30-2), Ex. F at 1.

replead his claims against all Defendants for unreasonable search and seizure to the extent the search exceeded that allowed under the administrative statute (Count III), and for invasion of privacy (Counts IX and X).  Judge Baker further recommended that Plaintiff be given leave to replead his official capacity claims against Sheriff Beary for false arrest (Counts I and IV), common law conversion (Count VII), and the violation of Plaintiff's right to privacy (Count VIII).

### III.  ASSIGNMENTS OF ERROR

Plaintiff challenges Judge Baker's recommendations on Plaintiff's claims for false arrest and malicious prosecution in his Objections to Portions of the Report and Recommendation ("Objections") (Doc. No. 42-1).

First, Plaintiff contends that Judge Baker's conclusion that Plaintiff's arrest was supported by arguable probable cause and that Counts I and V should be dismissed is premised on at least five errors: (1) a law enforcement officer cannot possess arguable probable cause if he or she ignores the plain language of a statute, and Chapter 319 of the Florida Statutes exempts Plaintiff from criminal liability because he was in the business of performing repairs on vehicles that required the removal or replacement of VINs and plates; (2) Judge Baker ignored the exculpatory evidence, including evidence offered by Plaintiff at the scene, that would have been apparent to deputies had they been acting reasonably; (3) Judge Baker mistakenly relied on two cases, *Marks v. Carmody*, 234 F.3d 1006 (7th Cir. 2000) and *Rohde v. City of Roseberg*, 137 F.3d 1142 (9th Cir. 1998), that are distinguishable

from the case at hand, whereas: (a) both cases were decided on summary judgment and not at the motion to dismiss stage of a case, (b) *Marks* states that an arrestee's mental state and credibility have no bearing on an officer's determination of probable cause when here Plaintiff's mental state is not at issue, and (c) in *Rohde*, the officers had reliable information, namely a police report indicating that a vehicle was stolen, that provided the probable cause for the driver's arrest; (4) Judge Baker's statement that two vehicles were ultimately forfeited is factually incorrect and exceeds the scope of Plaintiff's Amended Complaint in violation of the "four corners" rule; and (5) Judge Baker overlooked allegations in Paragraphs 21-24, 26-34, and 36-40 of Plaintiff's Amended Complaint which, in sum, state that Mr. Shaikh purchased his automobile from A+ Enterprises, Inc., Plaintiff's arrest was based on a bill of sale of a vehicle from a different business and Defendants therefore "raided" the wrong business, and Defendants ignored Plaintiff's attempts to show that he was not involved in any wrongdoing.  Plaintiff also argues that under Florida law, qualified immunity, including qualified immunity based on arguable probable cause, is not a defense to false arrest. Instead, probable cause is an affirmative defense to be proved by the defendant.

Second, Plaintiff contends that Judge Baker's findings in regard to his malicious prosecution claims are wrong.  Judge Baker found that Plaintiff's federal malicious prosecution claim fails because Plaintiff's arrest alone cannot form the basis of a post-arraignment seizure under the Fourth Amendment given that the arrest occurred prior to arraignment.  Judge Baker also found that Plaintiff's state law malicious prosecution claim fails because Plaintiff did not allege how the Defendants were the legal cause of the original proceeding.  Plaintiff argues that Judge Baker's

conclusions about his malicious prosecution claims and his recommendation that Counts II and VI should be dismissed are premised on at least two errors: (1) regarding his federal claim, Plaintiff alleged more than his arrest as the basis of his post-arraignment seizure; and (2) regarding his state claim, Plaintiff sufficiently showed that the individual defendants legally caused a prosecution to be initiated against Plaintiff because they made certain material misstatements of fact and omitted other facts as alleged in Paragraph 31 of the Amended Complaint.

Plaintiff requests that to the extent that the Court determines that he has not sufficiently alleged violations for false arrest and malicious prosecution, that the Court grant him leave to replead these claims.

## IV.  STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation, the district judge must make a *de novo* determination of the findings and/or recommendations to which any party objects. *See* 28 U.S.C. § 636(b)(1)(C) (2003). "This requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'" *Lacy v. Apfel*, 2000 U.S. Dist. Lexis 21437, *2-3 (M.D. Fla. Oct. 20, 2000) (quoting *Jeffrey S. v. State Bd. of Educ.*, 896 F. 2d 507, 512 (11th Cir. 1990)). "In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*." *Lacy*, 2000 U.S. Dist. Lexis 21437 at *3 (emphasis added) (internal citation omitted).  However, regardless of whether objections are filed, a district judge must review a magistrate's legal conclusions *de novo*.  *See id.*  After reviewing a report and recommendation,

objections, and responses thereto, the district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* § 636(b)(1)(C).

## V.  LEGAL ANALYSIS

### A.  Plaintiff's State Law Claims

Plaintiff's Amended Complaint (Doc. No. 30-1) asserts state law claims of false arrest against Sheriff Beary (Count IV), false arrest against the individual defendants (Count V), malicious prosecution against the individual defendants (Count VI), conversion against Sheriff Beary (Count VII), violation of the right to privacy against Sheriff Beary (Count VIII), invasion of privacy against Sheriff Beary (Count IX), and invasion of privacy against the individual defendants (Count X). *Sua sponte*[23], the Court examines whether it should exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over these claims.

Title 28, United States Code, Section 1367 codifies the doctrines formerly known as pendent and ancillary jurisdiction. *See Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1562 n.3 (11th Cir. 1994); *James v. Sun Glass Hut of California, Inc.*, 799 F. Supp. 1083, 1084 (D. Colo. 1992). Section 1367(c) lists specific circumstances in which a district court may decline to exercise supplemental jurisdiction over a state law claim joined with a claim over which the court has original jurisdiction. The district court may refuse to exercise supplemental jurisdiction if, *inter alia*, the state claim raises a "novel or complex issue of State law" or "substantially predominates over the claim or

---

[23]     *See Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000-01 (9th Cir. 1997) (en banc) recognizing that although district court is not required to *sua sponte* consider whether to accept or decline supplemental jurisdiction, better practice is for it to do so).

claims over which the district court has original jurisdiction."   28 U.S.C. § 1367(c)(1) & (2).

Additionally, a district court may decline to exercise jurisdiction over a state claim if "in exceptional

circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C.§ 1367(c)(4).

If, after examining the factors listed in § 1367(c), the district court "decides that it has the discretion

. . . to decline jurisdiction . . . , it should consider the traditional rationales for pendent jurisdiction,

including judicial economy and convenience, in deciding whether or not to exercise that jurisdiction."

*Palmer*, 22 F.3d at 1569.

Although Plaintiff does not cite to this provision, his official capacity state law claims asserted

against Sheriff Beary are brought pursuant to Fla. Stat. § 768.28, Florida's waiver of sovereign

immunity statute.  There are substantial differences between Fla. Stat. § 768.28 and 42 U.S.C. § 1983.

The Florida statute contains significant limitations on the amount of compensatory damages

which may be recovered.  In that regard, compensatory damages are limited to $100,000 per person

and $200,000 per occurrence.  *See* § 768.28(5).  There are no such restrictions on the amount of

compensatory damages available under § 1983.[24]

Additionally, under § 768.28(6), a claimant must furnish written notice of claim to a

government entity, and the government entity must deny that claim, before suit may be brought

thereon.  This provision does not apply to § 1983 claims,  *see Majette v. O'Connor*, 811 F.2d 1416,

---

[24]        Punitive damages may not be recovered against a government entity under both the Florida statute, *see*
§ 768.28(5), and under § 1983, *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

1418 (11th Cir. 1987) ("section 768.28(6) constitutes an exhaustion of administrative remedies requirement and is thus inapplicable to section 1983 suits"), and there are no comparable requirements under the federal statute.

Further, there are significant differences in the standards for liability under the two statutes. Under § 768.28(1) & (9)(a), a government entity may be held liable only if the employee who committed the negligent or wrongful act was acting within the scope of his or her office or employment. The standard for liability under § 1983 is different. To hold a government entity liable under that statute, the claimant must show that a custom or policy of the government entity caused the violation of a federally-protected right. *See Maughon v. Bibb County*, 160 F.3d 658, 659-660 (11th Cir. 1998).[25]

Additionally, as to all of the Defendants, there are differences in the specific elements which must be proved to establish the state law claims, on the one hand, and the federal civil rights claims, on the other.

These differences between the state law claims and the federal claims convince the Court that substantial confusion would result if the state law claims were allowed to proceed in this forum.

---

[25]    Florida Statute § 768.28(9)(a) "provides that Florida's waiver of sovereign immunity does not apply to, and governmental employees may be personally liable for, acts beyond the scope of their duties, committed in bad faith or with malicious purpose, or that exhibited wanton and wilful disregard of human rights, safety, or property." *McGhee v. Volusia County*, 679 So.2d 729, 730 (Fla. 1996). The Court need not determine whether all of the various procedural requirements of § 768.28 apply to the state law claims against the individual Defendants and Sheriff Beary. In conducting its supplemental jurisdiction analysis, the Court has assumed that those requirements do not apply to these claims. If, however, the various requirements of § 768.28 do apply, the differences between the Florida statute and § 1983 - in terms of allowable damages, notice requirements, and standards of liability - present additional grounds for this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims against the individual Defendants and Sheriff Beary.

Finally, as a result of their sheer number and differing elements, the state law claims substantially predominate over the § 1983 claims.

Based on the foregoing, the Court declines to exercise supplemental jurisdiction over the state law claims asserted against the Defendants.  Accordingly, the claims of false arrest against Sheriff Beary (Count IV), false arrest against the individual defendants (Count V), malicious prosecution against the individual defendants (Count VI), conversion against Sheriff Beary (Count VII), violation of the right to privacy against Sheriff Beary (Count VIII), invasion of privacy against Sheriff Beary (Count IX), and invasion of privacy against the individual defendants (Count X) are DISMISSED.

## B.  Plaintiff's Remaining Federal Law Claims

### 1.  False Arrest

Again, Plaintiff contends that he was arrested without probable cause.  "There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment."  *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).  However, the facts as presented in the Amended Complaint support Judge Baker's finding that the individual Defendants had arguable cause to arrest Plaintiff.

Plaintiff asserts that Judge Baker wrongfully failed to consider the statutory scheme under which Plaintiff was arrested, Chapter 319 of the Florida Statutes.  Chapter 319 regulates, among other things, offenses involving the destruction, removal, concealment, alteration, or defacement of vehicle identification numbers.  Section 319.30(5)(c) states, "[t]his chapter does not apply to anyone who removes, possesses, or replaces a manufacturer's or state-assigned identification

number plate, in the course of performing repairs on a vehicle, that require such removal or replacement." Fla. Stat. § 319.30(5)(c).  Because Plaintiff was arguably in the business of performing repairs that required the removal or replacement of vehicle identification number plates, Plaintiff asserts that he is exempt from the provisions of Chapter 319 pursuant to the plain language of subsection (5)(c).

Plaintiff cites *Madiwale* for the proposition that an officer cannot possess arguable probable cause if the officer ignores the plain language of a statute.  *See* Objections (Doc. No. 42-1) at 7.  The conflict in *Madiwale* arose when an officer attempted to hold an arrestee accountable for conduct not required under Florida statutory law.  In *Madiwale*, an officer arrested someone for not reporting an incident of child abuse to local law enforcement and the local HRS (Department of Health and Rehabilitative Services) office when Florida's child abuse reporting statute required only that a report of child abuse be made "to the department's central abuse hotline on the single statewide toll-free telephone number."  117 F.3d at 1325.  The officer in *Madiwale* knew that the arrestee had made calls to the HRS central hotline, but mistakenly thought that additional reporting to local agencies was required after being "told by an HRS hotline manager that callers . . . were instructed" to make the additional reports.  *Id.*  Because no additional reporting was required under the statute, and because the officer "had no reason to doubt that those acts [required by the statute] had been performed, [the officer] had no arguable probable cause" to make an arrest "pursuant to that statute."  *Id.*  By contrast, the issue here is not whether the individual Defendants ignored the plain language of statutes within Chapter 319 or attempted to expand or restrict the statutes' scope.

The issue is whether the officers' actions were justified by probable cause, and that probable cause need not be based solely on the provisions of Chapter 319.

Judge Baker correctly explained the standard for probable cause:

> Probable cause to arrest existed if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). "To determine whether an officer had probable cause to arrest an individual, [the court must] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Report and Recommendation (Doc. No. 41) at 15.   Because the individual Defendants here are being sued in their capacities as law enforcement officers, a qualified immunity analysis comes into play.  "To receive qualified immunity protection, [the officers] need not have actual probable cause but only *arguable probable cause*." Report and Recommendation (Doc. No. 41) at 18 (citing *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003)).  To determine whether an officer has arguable probable cause, a lower standard than actual probable cause, "the inquiry is 'whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.'"  Report and Recommendation (Doc. No. 41) at 18 (quoting *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999)).

Florida Statutes § 812.055 allows any law enforcement officer to inspect, among other locations, any "dealer's lot," "repair shop," or "other establishment dealing with salvaged motor

vehicle . . .  parts . . . for the purpose of locating stolen vehicles . . . ; investigating the titling and

registration of vehicles . . . ; inspecting vehicles . . . ; or inspecting records required" under Florida

law.  Fla. Stat. § 812.055.  This Court accepts Judge Baker's findings as to the information the

individual Defendants possessed at the time they arrested Plaintiff:

> Defendants learned during their records search [pursuant to Fla. Stat. §
> 812.055] that Plaintiff had at least two cars on his property with a missing
> or altered VIN.  Deputies had received a complaint from a witness (Mr.
> Shaikh) that the VIN on his vehicle, purchased from Plaintiff "Bill" Bruce
> had a problem.  Plaintiff contends that Mr. Shaikh's car was actually
> purchased from a different business with a very similar name (A+
> Enterprises), not Plaintiff's, a block away.  However, the sales receipt is
> signed by "Bill Bruce," which a reasonable police officer could have
> believed was the nickname of Plaintiff William Bruce (Doc. No. 30, Ex. E).
> More importantly, Mr. Shaikh came to the scene of Plaintiff's business (A+
> Auto Body) before signing the complaint, and it was reasonable for officers
> to believe Mr. Shaikh's lack of objection about the location meant they
> were at the correct business.  It was reasonable for Defendants to rely on
> Mr. Shaikh's complaint.  *See Joseph v. Kimple*, 343 F. Supp. 2d 1196, 1202
> (S.D. Ga. 2004) (the Fourth Amendment does not protect against an
> individual witness who gives incorrect information or lies about
> recollections to investigators), *aff'd*, 391 F.3d 1276 (11th Cir. 2004).
> Plaintiff contends that the bill of sale contained information that explained
> why the VIN was problematic–it "had been a theft recovery with an
> assigned Florida VIN."

Report and Recommendation (Doc. No. 41) at 20.  The fact that Plaintiff may have come within

the exception in § 319.30(5)(c) does not, by the plain language of the statute, exempt the Plaintiff

from investigation.  Plaintiff would have the Court read § 319.30(5)(c) as providing carte blanche

immunity from criminal liability for those who fall within its exemption.  However, such a reading

would render the statute ineffective and auto repair shop owners like Plaintiff could never be held

accountable for any legitimate violations of Chapter 319.   The individual Defendants had a statutory right to investigate Plaintiff's business under Fla. Stat. § 812.055.   A review of the information known to the officers at the time of the arrest supports Judge Baker's finding that the officers had arguable probable cause to arrest Plaintiff.

Plaintiff also asserts that in rendering his recommendation Judge Baker "ignored exculpatory evidence that was obvious to the individual deputies had they been acting reasonably as well as exculpatory evidence offered by Plaintiff at the scene." Objections (Doc. No. 42-1) at 7.  As Judge Baker correctly stated, "Defendants are not required to 'explore and eliminate every theoretically plausible claim of innocence' but they cannot choose to ignore information offered." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004).  Plaintiff contends that he attempted to offer evidence including "copies of the bankruptcy inventory; signed repair orders; towing bills;  mechanic liens relating to Specialty Vans, Inc.; [and] bills of sale for the 1993 black Mustang purchased by Mr. Shajkh [sic] stating that the car had been a theft recovery with an assigned Florida VIN." Amended Complaint (Doc. No. 30-1), ¶ 37 at 8-9.  It is interesting that Plaintiff was able to produce bills of sale for the vehicle Mr. Shaikh purchased despite Plaintiff's claims that Mr. Shaikh purchased the vehicle from a different business nearby.  Nevertheless, Plaintiff concedes that he was unable to account for at least one of the two vehicles for which the state court found probable cause to support forfeiture.  *See id.*, ¶ 37 n.1 at 9.  Of the two vehicles, Plaintiff claims that "[o]ne was left by a former employee, and Plaintiff did not claim ownership of it.  As to the other, Plaintiff could not identify it with certainty at the time of the hearing, but he

believed it to have been purchased from the bankruptcy court." *Id.* Plaintiff did "not dispute that the second vehicle was in his possession and that the VIN had been altered or tampered with." Report and Recommendation (Doc. No. 41) at 22. As Judge Baker wrote, "[w]here the police have information that there is something wrong with the identity of the vehicle, and the owner cannot refute it, it is reasonable for law enforcement to attribute knowledge of the car's legal status to the possessor of the vehicle." *Id.* (citing *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998)). Given that "Defendants had reliable information from a witness indicating that Plaintiff had sold him a vehicle with an altered or tampered VIN, and Defendants found at least one vehicle which undisputedly belonged to Plaintiff with a VIN that violated [Fla. Stat.] § 319.33, they had arguable probable cause to arrest [Plaintiff] on the charge of possession of a motor vehicle from which identification number has been removed." Report and Recommendation (Doc. No. 41) at 22 (citing Order on Probable Cause (Doc. No. 30-2), Ex. E).

The Court need not reach Plaintiff's additional objections to Judge Baker's recommendation on Plaintiff's false arrest claim whereas it is clear for the above stated reasons that the individual Defendants had arguable probable cause to arrest Plaintiff. Accordingly, Count I of Plaintiff's Amended Complaint is DISMISSED as to the individual Defendants. Plaintiff shall not be granted leave to replead his claim of false arrest against the individual defendants. Additionally, because Defendants did not present any argument for dismissal of the official capacity claims against Sheriff Beary, including Plaintiff's false arrest claim as it pertains to

Sheriff Beary (Count I), Plaintiff shall be granted leave to replead his allegations against Beary in a second amended complaint.  See Report and Recommendation (Doc. No. 41) at 27.

### 2. *Malicious Prosecution*

Plaintiff alleged a malicious prosecution claim under federal law (Count II).  "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove  a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003), *cert. denied*, 540 U.S. 879 (2003).  The Eleventh Circuit stated in *Kingsland v. City of Miami*:

> Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff;  (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.  *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002) (citing *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217 (Fla. 1986)).

382 F.3d at 1234.  There must be concurrence of these six elements, and "[t]he absence of any one element is fatal to the action."  24A Fla. Jur. 2d, False Imprisonment and Malicious Prosecution § 20 (citing *Alamo Rent-A-Car v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) ("[t]he failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution")).

Judge Baker found that Plaintiff met the first and third common law elements because Plaintiff "was charged by information with operating a chop shop and possession of a motor

vehicle from which the VIN number has been removed" and the state proceeding was terminated

in favor of Plaintiff in the form of a *nolle prosequi*.  Report and Recommendation (Doc. No. 41)

at 24.  Judge Baker also found that Plaintiff failed to prove at least two of the remaining elements

in dispute:  (1) that Plaintiff was subject to a "continuing seizure" in violation of his Fourth

Amendment right to be free from an unreasonable seizure, *Kingsland*, 382 F.3d at 1235, and (2)

that Defendants were the legal cause of the original proceedings instituted against Plaintiff.

The facts as alleged in Plaintiff's Amended Complaint fail to establish a violation of

Plaintiff's constitutional right to be free from an unreasonable seizure.  Judge Baker correctly

outlined the standard for analyzing this element of a malicious prosecution claim:

> As the Eleventh Circuit has held, it is not enough that the *prosecution* against a § 1983 claimant continues[;] the Plaintiff bears the burden of proving that he continued to be *seized* in relation to the continuing prosecution, in violation of his constitutional rights. *Kingsland*, 382 F.3d at 1235.  The original arrest cannot form the basis for the federal malicious prosecution claim.  *Id.*  Where the arrest is warrantless, as in this case, the judicial proceeding does not begin until the party is arraigned or indicted and a plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment.  *Id.* at 1235.

Report and Recommendation (Doc. No. 41) at 25.

Plaintiff concedes "that his arrest, standing alone, cannot form the basis of a post-

arraignment seizure under the Fourth Amendment."  Objections (Doc. No. 42-1) at 13.  Plaintiff

argues that additional facts tend to show that he was subjected to a continuous seizure.  According

to Plaintiff, his "person was seized during the time of the initial search, at the time he was arrested

until the time he was released from jail, and thereafter until the criminal prosecution was dropped

and his bond was discharged." *Id.*  Plaintiff also argues that the various limitations on his liberty and ability to travel during the criminal prosecution contributed to his continuing seizure. *Id.*  The Eleventh Circuit in *Kingsland* reversed a district court's holding that a plaintiff "was subjected to a 'continuing seizure' for Fourth Amendment purposes because she was required to (1) pay a $1,000 bond; (2) appear at her arraignment; and (3) make two trips from New Jersey to Florida to defend herself in court, pursuant to the authority of the state." 382 F.3d at 1235.  Relying on the decisions of sister circuits, none of which concluded "that normal conditions of pretrial release constitute a 'continuing seizure' barring some significant, ongoing deprivation of liberty, such as a restriction on the . . . right to travel interstate," the *Kingsland* court found that the plaintiff's conditions of pretrial release "did not constitute a signification deprivation of liberty" such that it would constitute "a seizure violative of the Fourth Amendment." *Id.* at 1236.  In the case at hand, Plaintiff has not alleged when he was arraigned or that he was subject to a significant, ongoing deprivation of liberty.  Nor does Plaintiff allege with any particularity the types of "various limitations on his liberty and ability to travel" that he claims he was subjected to.  Judge Baker correctly recommended the dismissal of Plaintiff's federal malicious prosecution claim (Count II) whereas Plaintiff has failed to present facts sufficient to support a crucial element of his claim.

Because Plaintiff could not prove the first prong of his federal malicious prosecution claim, the Court need not reach Plaintiff's objection to Judge Baker's finding that Plaintiff failed to prove the state common law element of legal causation.

Accordingly, for the above stated reasons, Plaintiff's claim for malicious prosecution is DISMISSED as to all Defendants.  Plaintiff shall not be granted leave to replead this claim.

### 3. Unreasonable Search and Seizure of Plaintiff and His Business

Judge Baker recommended that Plaintiff's claim for unreasonable search and seizure (Count III) be dismissed, but that Plaintiff be allowed to replead this claim.  Plaintiff did not object to this recommendation.  Accordingly, Judge Baker's Report and Recommendation is AFFIRMED as to this issue and Plaintiff shall be granted leave to replead this claim.

## VI.  CONCLUSION

Therefore, it is **ORDERED** as follows:

1.      The Report and Recommendation filed August 11, 2005 (Doc. No. 41), is **ADOPTED** and **CONFIRMED** and made a part of this Order as it pertains to Plaintiff's claims in federal law.  The Motion to Dismiss (Doc. No. 34) is therefore GRANTED in part and DENIED in part.

2.      Count I of Plaintiff's Amended Complaint is DISMISSED as to Deputies Root, Kelly, and Glantz.  Count I of Plaintiff's Complaint is DISMISSED with leave to replead as to Plaintiff's official capacity claim for false arrest against Sheriff Beary.  Count II of Plaintiff's Amended Complaint is DISMISSED as to all Defendants.  Count III of Plaintiff's Amended Complaint is DISMISSED with leave to replead as to all Defendants.

3.      The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  Accordingly, Counts IV, V, VI, VII, VIII, IX, and X of Plaintiff's Amended Complaint are DISMISSED.

4.      Plaintiff shall file a second amended Complaint which pleads only those claims permitted by this Order on or before October 7, 2005.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on September 23, 2005.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

United States Magistrate Judge
Counsel of Record
Unrepresented Party

-23-